# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Mary Weber,**
**Plaintiff Below, Petitioner**

**vs)  No. 17-0969** ( Monongalia County 14-C-31)

**Terry Linn,**
**Defendant Below, Respondent**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mary Weber, by counsel James R. Leach and Victoria Sopranik, appeals the Circuit Court of Monongalia County's October 5, 2017, order denying her motion for a new trial. Respondent Terry Linn, by counsel David Glover, filed a response in support of the circuit court's order. Petitioner filed a reply. Petitioner argues that the circuit court erred in denying her motion for a new trial as the jury's verdict was against the overwhelming evidence that petitioner's injuries were proximately caused by the parties' accident. Further, petitioner contends that she was unfairly prejudiced by the circuit court's exclusion of certain evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

The underlying case arises from a July 13, 2012, motor vehicle accident wherein a vehicle operated by petitioner was struck, in the rear, by a vehicle operated by respondent as the parties were stopped at a traffic light. The accident occurred as both petitioner and respondent were leaving the Waterfront Place Hotel in Morgantown, where they had both attended a work conference. Neither of the air bags in the parties' respective vehicles deployed as a result of the accident. Respondent represents that the parties determined that it was not necessary to contact law enforcement officers to complete a motor vehicle accident report because neither she nor petitioner reported any physical injuries, respondent's vehicle was not damaged, and petitioner's vehicle had only limited damage (a dent in rear fender).

On the evening of the accident, after driving nearly two hours to her home, petitioner presented at an emergency room with complaints of pain in the neck, shoulders, mid back, low back, knees, and headache. X-rays were taken of petitioner's cervical and lumbar spine. The x-rays showed no evidence of traumatic injury. When petitioner's back, knee, and neck pain persisted, she began a course of medical treatment with her sister, Chiropractor Anna Hughes,

1

who ultimately referred her to neurosurgeon Dr. Abdi Ghodsi for treatment of her neck and back pain, and Dr. Jeffery McElroy for treatment of her knee pain.

The evidence revealed that petitioner has a long history of back and neck pain and has been treated with Chiropractor Hughes and Dr. Ghodsi for these conditions intermittently since 1999, having previously undergone low back surgery to correct disc herniations performed by Dr. Ghodsi in 2001.[1] In fact, respondent notes that, just eight days before the underlying accident, petitioner presented at Chiropractor Hughes office complaining of back pain associated with lifting frozen food for which she received a chiropractic manipulation of her back and neck. She was also prescribed two back braces to wear while at the conference she had just attended right before the accident.

Petitioner's first treatment with Dr. Ghodsi following the subject accident was on August 9, 2012. During this visit, Dr. Ghodsi noted

> that petitioner has normal cervical lordosis, Spurling's test was absent, no pain with axial loading, paraspinal muscle strength was full, tone was within normal limits, no subluxations, upper and lower extremity strength was five out of five, upper and lower extremity motor functions showed normal tone, no abnormal movements, no weakness, no reflex loss, no sensory loss.

However, despite these findings, Dr. Ghodsi recommended both cervical and lumbar surgery for petitioner. According to petitioner, the recommendation for surgery was based not simply on petitioner's subjective complaints of pain but on the objective medical evidence revealed by a clinical examination and on MRIs of her lumbar and cervical spine. Dr. Ghodsi believed that petitioner's lumbar MRI revealed a significant disk herniation at L2-3, and, based upon that finding and other clinical testing, he concluded that petitioner suffered from a cord compression in the cervical spine that necessitated surgery.

Petitioner did not wish to undergo the recommended surgery and sought conservative treatment. She completed a course of physical therapy and sought additional opinions on the necessity of surgical intervention by two other neurosurgeons, Dr. Joseph Crow and Dr. Gregory Mavian. When the conservative treatments failed to relieve petitioner's pain, she underwent a C5-6 and C6-7 cervical discectomy and fusion with allograft and plate performed by Dr. Ghodsi on January 10, 2013.

At the time of the underlying accident, petitioner was insured under a policy of insurance issued by State Farm Mutual Automobile Insurance Company ("State Farm"). Because causation of petitioner's injuries was challenged, State Farm obtained petitioner's medical records and other records related to the occurrence of the accident and sent the same to Dr. Constantino Amores, a board certified neurosurgeon, for completion of an independent medical records

---

[1] In 2006, petitioner treated again with Dr. Ghodsi for a soft cervical herniated disc that reportedly caused pain in her neck and left arm. Petitioner's treatment for the 2006 injury concluded in October of 2006 and was described as "successful."

review.[2] Dr. Amores agreed with Dr. Ghodsi and opined that petitioner's treatment, including her January 10, 2013, surgery, was related to injuries she sustained in the underlying accident.

Ultimately, petitioner filed the underlying lawsuit against respondent. During pre-trial proceedings, petitioner filed a motion to exclude respondent's expert witness, Dr. Andrew Rentschler. A hearing was held on petitioner's motion on May 28, 2015, at which the trial court ruled that Dr. Rentschler's testimony at trial would be limited to his expert credentials, the evidence he reviewed on which he based his opinions, and the four specific opinions set forth in respondent's expert witness disclosure and discovery responses.

Prior to trial, petitioner identified Dr. Amores as a trial witness. In response, respondent field a motion in limine to preclude any testimony that Dr. Amores was retained by State Farm pursuant to Rule 411 of the West Virginia Rules of Evidence. A hearing was held on respondent's motion. After hearing the arguments of counsel, the court ruled that petitioner was precluded from introducing any evidence at trial that respondent was or was not insured at the time of the accident and was further precluded from eliciting any testimony or introducing evidence that Dr. Amores was retained by State Farm to complete an independent records review.

On October 14, 2015, the trial of the underlying case began. At trial, petitioner called four lay witnesses (herself, her daughter, her fiancé, and a representative of her employer) and three expert witnesses, Drs. Ghodsi and Amores and Chiropractor Hughes. Dr. Ghodsi and Chiropractor Hughes testified, to a reasonable degree of medical (chiropractic) probability that the underlying accident caused petitioner's neck pain, disk herniations, cervical surgery, headaches, and disk herniations. Dr. Amores, like Dr. Ghodsi and Chiropractor Hughes, testified that petitioner's prior history of medical treatment made her more vulnerable to injury resulting from the underlying accident.

Under cross-examination, Chiropractor Hughes acknowledged that just five days after the accident, petitioner reported that her neck was improved. Under cross-examination, Drs. Ghodsi and Amores testified that their opinions as to causation of petitioner's injuries were subjective and based upon the history petitioner provided to them. Both doctors acknowledged that if petitioner was not accurate in the history she gave them, their opinions on causation would not be accurate.

Petitioner, her daughter, and petitioner's fiancé testified as to the negative physical and emotional effects petitioner experienced following the accident. Under cross-examination, respondent strongly challenged the veracity of petitioner's testimony and argued that petitioner attempted to downplay the significance of her 2006 neck injury, which petitioner testified, "caused a simple strain." However, Dr. Ghodsi's testimony revealed that an MRI of petitioner following the 2006 injury revealed a herniated disc, disc tear, and osteophytes.

Respondent testified at trial as to the occurrence of the accident, wherein she stated that petitioner's vehicle rolled backward into her vehicle. Further, respondent testified that

_____

[2] Dr. Amores never examined petitioner.

3

petitioner's vehicle sustained only minor damage and that, immediately following the accident, petitioner reported that she was not injured. At trial, respondent called Dr. Andrew Rentschler, a biomechanical engineer, as an expert witness. Dr. Rentschler testified that the underlying accident was of minimal impact and insufficient velocity or force to cause petitioner's alleged injuries. According to petitioner, Dr. Rentschler's testimony was extremely brief and consisted of only four questions asked by respondent's counsel, to which Dr. Rentschler responded with a "yes" or "no" answer. Under cross-examination, Dr. Rentschler stated that the accident was a six-mile an hour impact. Petitioner argues that respondents did not disclose this "opinion" of Dr. Rentschler prior to trial. Given this unexpected testimony by Dr. Rentschler, coupled with respondent's testimony regarding the occurrence of the accident, petitioner "attempted to call a rebuttal expert witness to respond to the testimony regarding lack of damage" to respondent's vehicle. The court excluded the testimony of the rebuttal expert because the expert was not specifically identified in petitioner's final witness disclosure.

On October 16, 2015, the jury returned a verdict in respondent's favor, finding that petitioner was not injured as a result of the July 13, 2012, accident.[3] The jury did not award petitioner any damages. A judgment order was entered on October 29, 2015. Petitioner subsequently filed a motion for a new trial, which was denied by order dated October 5, 2017. In its order, the circuit court found that the evidence presented at trial supported the jury's verdict. Specifically, the court noted that petitioner had the burden of proving that she incurred injuries and damages resulting from the accident, and that, at trial, the jury had heard conflicting evidence from which it could find that petitioner sustained no injuries or damages caused by the accident. The court detailed respondent's introduction of photographs depicting a small dent in the bumper of petitioner's vehicle and showing no corresponding damage to respondent's vehicle. Further, respondent introduced evidence that petitioner was not injured as a result of the subject accident, but had pre-existing injuries and treatment and had, in fact, treated with a chiropractor just days prior to the accident. Finding that underlying matter was fairly tried and as the verdict was supported by the evidence, the circuit court concluded that the award of a new trial was unwarranted. It is from the circuit court's October 5, 2017, that petitioner now appeals.

On appeal, petitioner asserts three assignments of error. First, petitioner contends that the jury verdict was against the manifest weight of the evidence and, accordingly, must be set aside. In her second and third assignments of error, petitioner argues that she was unfairly prejudiced by the circuit court's exclusion of a rebuttal witness and evidence related to the existence of liability insurance.

We have explained that

> [t]his Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

[3] The jury was asked "Do you find from a preponderance of the evidence that petitioner sustained damages as a proximate result of this accident?" and the jury responded "No."

Syl. Pt. 1, *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W. Va. 105, 736 S.E.2d 338 (2012). Superseded by statute on other grounds as recognized in *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017). We have also held that

> [a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. Pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). Here, the circuit court found that the conflicting evidence presented by the parties at trial supported the jury's verdict. "A jury's verdict is accorded great deference when it involves the jury weighing conflicting evidence." *McNeely v. Frich*, 187 W. Va. 26, 29, 415 S.E.2d 267, 270 (1992). In syllabus point two of *Walker v. Monongahela Power Company*, 147 W. Va. 825, 131 S.E.2d 736 (1963), we noted that "[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." (Citation omitted.) We have further held that

> [i]n determining whether the verdict of jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

Syl. Pt. 3, *id.* In the instant case, the evidence showed that the impact between the parties' vehicles resulted in no damage to respondent's vehicle and only minor damage to the bumper of petitioner's vehicle. Respondent presented evidence that petitioner made reports that she was not physically injured at the accident scene. Further, respondent was able to refute petitioner's claims that her injuries were related to the accident given petitioner's extensive history of prior medical and chiropractic treatment for similar injuries. Based upon our review of the record, we agree with the circuit court's determination that the jury's verdict was not "plainly contrary to the weight of the evidence" and had sufficient evidentiary support. We additionally reference our long held premise that "[t]he trier of fact is uniquely situated to make such [credibility] determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). As the circuit court did not plainly err or abuse its discretion in instructing the jury, which is in the unique position to make credibility determinations and weigh evidence, we find no error.

In her second and third assignments of error, petitioner argues that the circuit court erred in excluding the trial testimony of a rebuttal witness presented by petitioner and evidence related to liability insurance. This Court has long held that

> [t]he West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to

the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995).

At trial, petitioner sought to elicit rebuttal expert testimony from Geoff Cullum, a certified auto body and frame technician. Mr. Cullum was expected to refute respondent's claim that petitioner's vehicle rolled back into her vehicle and discount Dr. Rentschler's testimony. Petitioner proffered that Mr. Cullum was not to be called to "present testimony comprised of information already presented, but to specifically deny 'some affirmative fact[s] which the answering party has endeavored to prove.'" Without this testimony, petitioner argues that she was forced to rely just on her closing argument. Petitioner avers that the unheard testimony of Mr. Cullum could have "radically altered the outcome of this case." Contending that the exclusion of the rebuttal witness was an error of law that affected the outcome of the trial, petitioner argues that the circuit court erred in failing to grant her a new trial.

We have previously held that "[a]llowance of a party to present additional evidence on rebuttal depends upon the circumstances of the case and rests within the discretion of the individual most able to weigh the competing interests and circumstances—the trial judge." Syl. Pt. 4, *Michael on behalf of the Estate of Michael v. Sabado*, 192 W. Va. 585, 453 S.E.2d 419 (1994). Here, the circuit court excluded petitioner's rebuttal expert on the grounds that, prior to trial, petitioner failed to identify the expert by name, as a rebuttal expert or otherwise, and that such an occurrence was unfairly prejudicial to respondent.

Petitioner contends that it was not until the unexpected trial testimony of Dr. Rentschler and respondent that petitioner realized a "rebuttal witness became [actually] necessary." However, respondent argues, and we concur, that petitioner was aware of the opinions of Dr. Rentschler eight months prior to trial, but never disclosed a rebuttal expert witness or the opinions of that expert. On February 24, 2015, petitioner was first advised of the opinions of Dr. Rentschler. On April 9, 2015, petitioner was again advised regarding the four opinions Dr. Rentschler would offer at trial. During the discovery process, petitioner had an opportunity to depose Dr. Rentschler and question his findings and opinions, but did not do so. Dr. Rentschler's testimony was no surprise to petitioner, as the lack of damage to the vehicles involved in the accident was known to all. Accordingly, we find that the trial court acted within its sound discretion in excluding petitioner's rebuttal expert witness.

Finally, petitioner argues that the circuit court erred in prohibiting her from referencing that Dr. Amores was hired by her underinsurance carrier. The circuit court found that advising the jury that Dr. Amores was retained by petitioner's insurance carrier was not relevant and the probative value of such evidence was substantially outweighed by the danger of unfair prejudice to respondent.

This Court has stated that

6

an insured is presumed to be protected from undue prejudice from the admission of evidence of insurance at trial if the following requirements are met: (1) the evidence of insurance was offered for a specific purpose other than to prove negligence or wrongful conduct; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court delivered a limiting instruction advising the jury of the specific purpose(s) for which the evidence may be used.

*Reed v. Wimmer*, 195 W. Va. 199, 206, 465 S.E.2d 199, 206, (1995),

Based upon our review of the record, we find that the trial court acted within its sound discretion in excluding such evidence at trial. We further note the spurious nature of petitioner's claim of prejudice in this regard, as she did not heed the trial court's ruling excluding the admission of this evidence at trial. During her testimony, petitioner made several references to her agent and noted specifically that she did not hire Dr. Amores. Hence, we find that petitioner's actions in this regard effectively eliminated any possible prejudice the exclusion of such evidence would have caused.

For the foregoing reasons, we affirm the circuit court's October 5, 2017, order.

Affirmed.

**ISSUED:** November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

7